## Susie Gardner and E. O. Gardner v. Commonwealth.

(Decided January 11, 1927.)

### Appeal from Warren Circuit Court.

1. Arson—In Arson Prosecution, Refusal to Admit Testimony Explaining why Rags Found on Premises were Soaked in Oil Held Error.—In prosecution for arson, refusal of court to admit evidence showing that rags found on premises, soaked in oil, had been paint covered aprons, from which paint was being attempted to be removed by soaking in oil, held error.

2. Criminal Law—In Arson Prosecution, Newly Discovered Evidence, Showing how Fires Started Simultaneously in Two Rooms, Held to Require New Trial.—In prosecution for arson, newly discovered evidence explaining how fire broke out in two separate rooms simultaneously, though door and transom were closed, being very material to case, new trial would be granted.

3. Criminal Law—In Case of Reasonable Doubt at to Defendants' Guilt, They Should be Acquitted.—If jury has reasonable doubt that defendants, or either of them, have been proven guilty, they will acquit them both, or the one not so proven guilty.

RODES & HARLIN for appellants.

FRANK E. DAUGHERTY, Attorney General, for appellee.

Opinion of the Court by Commissioner Hobson—
Reversing.

Susie Gardner and her husband E. O. Gardner were indicted in the Warren circuit court for arson. On the trial of the case they were found guilty and their punishment fixed at five years in the penitentiary. They appeal.

For many years E. O. Gardner and his wife lived at Jennie, Kentucky, four miles from Cave City. Gardner ran a grocery store and his wife for many years had run a millinery store in Cave City. They sold their property in the fall of 1924 and about the last of the year moved to Bowling Green. There E. O. Gardner bought the grocery of A. P. Dobson and rented from Dobson four rooms in his residence to live in. They moved in about the first of January. The part of the dwelling house they occupied consisted of four rooms, one behind the other, each having a door opening into the room behind it and two of the rooms having doors opening into the hall. The front room was known as the living room; the next as the bedroom; the next as the dining room; the next as the kitchen. A door opened from the kitchen out on the back porch. After they had been there about a month, one night about twelve o'clock, the neighbor living on the lot adjoining discovered the house to be afire, and called the fire department. He also awoke Dobson who lived in the other side of the house. The fire department arrived in about three minutes. Gardner came out in his night clothes and told the firemen that the kitchen was afire, saying it was a small fire and they could put it out directly. The fire chief, while some of the party went to the kitchen, went through the front door and went to the dining room door. Gardner was a little slow in getting the door opened, but finally did open the door and then it was discovered that this room was in flames. After using a small fire extinguisher he had with him the chief went back to get a larger extinguisher. When he came back the front door which had a night lock on it was shut and locked and had to be forced open. With the extinguisher they soon put out the fires in both rooms. They found back of the kitchen stove, in the kitchen, some partially burnt rags in a can, saturated with coal oil. They also found on the floor of the kitchen burlap sacks with coal oil on them. The proof for the Commonwealth was to the effect that in the dining room there was a rug partially burned, which had coal oil on it, and also a divan

which smelled of coal oil. The proof for the Commonwealth showed that the door between the kitchen and dining room was shut; there was a transom over the door. The transom was closed and there was no way by which the fire in one room could have been communicated to the other. The Commonwealth also showed that Gardner had applied to an insurance agent for a thousand dollars insurance on his household goods; that his wife had increased this to fifteen hundred and that the agent had written a binder making the insurance effective from date, but he had not delivered the policy as the premium had not been paid. Mrs. Gardner had asked for $500.00 insurance on her millinery goods, which were packed in paper boxes and stacked up in the dining room, and as she had asked for this insurance this was included in the binder which the agent had drawn up. He says that he told them he had issued the policy and that the binder was in force. The Commonwealth also introduced proof tending to show that the household goods were not worth over $500.00, and that the millinery was practically all destroyed by the fire. This proof also tended to show that the millinery was not of much value.

The proof for the defendants showed that Mrs. Gardner had done her washing that day and hung up the clothes to dry on a rope fastened at one side of the kitchen and passing across the kitchen to the transom and then from the transom across the dining room to the other wall; that after she had done some ironing she and her husband, before they went to bed, made fires back there to make the clothes dry out, she in the kitchen stove, he in the dining room stove. He put some excelsior in the stove and some kindling on it; poured some coal oil on this and then put some fine coal on top of it. He then lighted the stove and shortly after this there was an explosion. The stove door blew open; they went in and looked around but saw no fire anywhere and after a while went to bed thinking that all was right. They knew nothing of the fire until waked up by the call of the neighbor. They accounted for the fire in both rooms from the fact that the rope holding the clothes burned in two and when this happened each end of the burned rope fell from the transom to the floor beneath and then set fire to the things about it. Mrs. Gardner testified that a day or two before she had been up at the store painting the store preparatory to moving her millinery goods up there and in this way

had gotten some paint on two of her aprons. The rags produced on the trial, which had been taken from the jar, were identified by her as parts of these aprons. She said that she poured coal oil on them and put them in the jar to soak to get the paint off of them. She also testified that she was ironing in her slippers; that the kitchen floor was cold and she had spread the burlap sacks on the kitchen floor to protect her feet. Her husband and the man who did the hauling testified that when Gardner moved his stock he brought along ten gallons of coal oil in five gallon tanks which had only shuck stoppers and that they wrapped the burlap sacks around the tanks to protect the goods from the coal oil. The proof for the defendants also showed that there was no rug in the dining room with coal oil on it and no coal oil on the divan.

The coal oil on the burlap sacks which were on the kitchen floor was explained by the testimony of E. O. Gardner, and his testimony was supported by the man who did the hauling. The strongest evidence against them were the rags saturated with coal oil, which were partly burned, for these had so much coal oil on them that it might seem that they were intended to burn the house. Mrs. Gardner's testimony was the only evidence explaining these rags. On the trial she offered as a witness a lady living in Bowling Green for many years, and proved by her that the rags produced at the trial were the remains of an apron which she saw over at the grocery where Mrs. Gardner had it over her dress to protect her dress while she was painting. She then offered to prove by this witness as follows:

'She saw Mrs. Gardner painting with this apron on over her dress and the apron having a very considerable quantity of paint on it and it being suggested as to how to remove the paint she informed Mrs. Gardner that if she would saturate it in coal oil it would come out. She had been painting for three or four days and she asked my advice about taking this paint out.''

This was very important evidence for the defendants. The jury may not know that coal oil will take paint out of such goods. It was important for the defendant to show that coal oil would take the paint out after she showed that she had gotten the paint on her aprons and had put

them in the coal oil for the purpose of getting the paint off of them. These rags, half burned, were the central point in the case and the refusal to admit this evidence was clearly prejudicial to the defendant's substantial rights.

The other central fact in the case is the proof that there was fire in both the rooms without any opening between them, for this unexplained would make it appear that the fire was started in both rooms. On the motion for a new trial newly discovered evidence was offered to this effect: The catch on the transom did not hold it; the transom would look like it was closed when it was not entirely closed. There was proof on the trial by one witness for the Commonwealth that the rope did not go through the transom but went from one side of the kitchen to the other. On the motion for a new trial the testimony was offered by a person who had seen the rope through the transom that afternoon before the fire. There was also proof that the burn on the floor of the rooms was just where the end of the burned rope would fall. This was very important evidence, too, as it explained how the fire got in the kitchen; the explosion of the stove occurred in the dining room.

The defendants both testified that while they had had some talk with the agent about insurance they had reached no conclusion; nothing had been told them about a binder or about the policy being written and that they didn't know anything about any policy or binder. They are both old people, having children and grandchildren. Their proof showed that their household goods were of value more than $1,500.00 and the millinery more than $500.00. The proof against them is entirely circumstantial, and in view of all the facts the court reaches the conclusion that a new trial should be granted. On another trial the court will modify instruction No. 2 so as to make it read as follows:

> "If the jury have a reasonable doubt that the defendants or either of them have been proven guilty they will acquit them both or the one not so proven guilty."

Judgment reversed and cause remanded for a new trial.